IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RUFUS A.,[1] | : | Case No. 3:20-cv-124 |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| Defendant. | : | |

**DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Securty Income in November 2016. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 13), Plaintiff's Reply (Doc. 15), and the administrative record (Doc. 9).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since January 1, 2010. At that time, he was 25 years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has at least a high school education. *See* 20 C.F.R. § 404.1564(b)(4). He meets the insured status requirements of the Social Security Act through June 30, 2017.

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9, PageID 45-64), Plaintiff's Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 13), and Plaintiff's Reply (Doc. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" (*Id.*) (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1: Plaintiff has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.
>
> Step 2: He has the severe impairments of "obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, social phobia, and bipolar disorder."
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity (hereinafter "RFC"), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of medium work as defined in 20 C.F.R. § 404.1567(c), subject to the following limitations: "[Plaintiff] is limited to simple, routine tasks but not at a production rate pace or with strict performance quotas. [Plaintiff] is capable of occasional interaction with supervisors and coworkers, but he is limited to no interaction with the general public and no jobs

>>requiring tandem tasks or teamwork. [Plaintiff] is capable of tolerating occasional changes to a routine work setting defined as one to two per week."
>
>>He is unable to perform any of his past relevant work.
>
>Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. 9, PageID 45-64.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 64.)

## V. ANALYSIS

Plaintiff asserts that the ALJ erred in his evaluation of the mental health medical source opinions. (Doc. 10, PageID 718-19.) He contends that even though the ALJ afforded partial weight to the opinions of treating therapist William LaVanche, P.C.C., and treating psychiatrist Stephanie Ackner, M.D., he failed to explain which portions of these opinions were given weight. (*Id.,* PageID 719.) Likewise, Plaintiff argues that the ALJ erred by giving partial weight to the opinions of the state agency psychologists but failing to adopt their limitations, despite purportedly finding that Plaintiff is more limited than they had opined. (*Id.,* PageID 721-22.) Plaintiff concludes that, as a result, the ALJ's Step Five non-disability finding is not supported by substantial evidence. (*Id.*, PageID 722-23).

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 404.1527 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b), (c).

5

Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides…medical treatment or evaluation and who has…an ongoing treatment relationship" with a claimant. 20 C.F.R., § 404.1527(a)(1). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This

6

mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." (*Id.*) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).[3] The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

As for medical opinions from sources that are not "treating sources" as defined in 20 C.F.R., § 404.1527(a)(1), the ALJ must consider the following factors set forth for the evaluation of medical opinions: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. *Id.* at (c).

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility for determining a claimant's RFC. *See e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1520(a)(4)(iv) ("the administrative law judge . . . is responsible for assessing your [RFC]"). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s)-- submitted by an individual's treating source or other acceptable medical sources." *Id.* (footnote omitted).

---

[3] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

7

The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Blakley,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004)). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." (*Id.,* quoting *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)). Thus, the ALJ's decision may be affirmed even if substantial evidence in the record supports the opposite conclusion. *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

Mr. LaVanche

Mr. LaVanche completed a Mental Functional Capacity Assessment for the Ohio Department of Job and Family Services on August 3, 2016. (Doc. 9, PageID 418.) In this checkbox form, Mr. LaVanche indicated that Plaintiff was "not significantly limited" in the following abilities: to remember locations and work-like procedures; to understand and remember very short and simple instructions; to carry out very short and simple instructions; to sustain an ordinary routine without special supervision; to ask simple questions or request assistance; to respond appropriately to changes in the work setting; and to be aware of normal hazards and take appropriate precautions. (Doc. 9, PageID 418.) According to Mr. LaVanche, Plaintiff was "moderately limited" in the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; to interact appropriately with the general public; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to set realistic goals or make plans independently of others. (*Id.*)

Mr. LaVanche also found that Plaintiff was "markedly limited" in the following abilities: to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to make simple work-related decisions; to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to travel in unfamiliar places or use public transportation. (*Id.*)

The ALJ assigned Mr. LaVanche's opinion partial weight under the "treating physician rule," reasoning that Mr. LaVanche's opinion is not entitled to controlling or deferential weight under the regulations. (Doc. 9, PageID 60.) In support of this assignment, the ALJ explained that Mr. LaVanche's opinion appears to be "a relatively uncritical acceptance of Plaintiff's subjective complaints." (*Id.*) The ALJ also cited to several treatment notes and concluded that the record "does not support the extreme restrictions opined by Mr. LaVanche." (*Id.,* PageID 60-61.)

As an initial matter, the ALJ inappropriately applied the "treating physician rule" to Mr. LaVanche's opinion. The regulations define a "treating source" as a claimant's "own *acceptable medical source* who provides…medical treatment or evaluation and who has…an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(1) (emphasis added). For applications filed prior to March 27, 2017, an

9

"acceptable medical source" is a medical source who is a licensed physician, licensed psychologist, licensed optometrist (for impairments of visual disorders, or measurement of visual acuity and visual fields only), licensed podiatrist (for impairments of the foot, or foot and ankle only), or qualified speech-language pathologist (for speech or language impairments only). 20 C.F.R. § 404.1502(a).

Here, Mr. LaVanche is a licensed Professional Clinical Counselor. (*See* Doc. 9, PageID 418.) Although he is a medical source, he does not fall within the list of "acceptable medical sources" and therefore is not a "treating source" for the purposes of the "treating physician rule." 20 C.F.R. §§ 1502(a), 404.1527(a)(1); *Rogers*, 486 F.3d at 242. Thus, the ALJ did not need to evaluate whether Mr. LaVanche's opinion should be given controlling weight or deferential weight, as his opinion was not entitled to any greater deference.

Although the ALJ's decision to evaluate Mr. LaVanche's opinion under the "treating physician" rule is a legal error, that error is harmless because the ALJ did not assign controlling weight to the opinion. Instead, the ALJ appropriately weighed the factors under 20 C.F.R. § 404.1527(c) and discounted Mr. LaVanche's opinion. The ALJ's decision to assign only limited weight to Mr. LaVanche's opinion is supported by substantial evidence and so cannot be reversed by this Court.

For example, the ALJ found that Mr. LaVanche's opinion is a "relatively uncritical acceptance of [Plaintiff's] complaints" after noting that the opinion is unsupported by Mr. LaVanche's progress notes. (Doc. 9, PageID 60-61.) Although Plaintiff complained of difficulty sustaining concentration, he performed "relatively well"

10

on concentration tasks during a mental status examination a few weeks earlier. (*Id.,* citing Doc. 9, PageID 415-17, 419-20.) The ALJ also found that Mr. LaVanche's opinion is inconsistent with other treatment notes in the record, including records from treating psychiatrist Dr. Ackner. (*Id.,* PageID 60-61.) The ALJ observed that although Plaintiff sometimes experienced "setbacks," he "generally demonstrated improvement throughout treatment." (*Id.*) The ALJ supported this conclusion with references to several other treatment notes in the record, which the ALJ summarized in detail earlier in the decision. (*Id.,* PageID 53-58.) The ALJ's conclusions are supported by substantial evidence and the applicable legal framework did not require him to do more.

Plaintiff also asserts that the ALJ "vaguely" assigned partial weight "without explaining which 'parts' of these opinions were given weight." (Doc. 10, PageID 718.) But the ALJ plainly stated that the record "does not support the extreme restrictions" opined to by Mr. LaVanche. (Doc. 9, PageID 60-61.) This statement sufficiently clarifies that the parts of Mr. LaVanche's opinion that related to his proffered restrictions received little weight. No regulation or rule required the ALJ to be more specific in his discussion of the weight assigned to Mr. LaVanche's opinion. Thus, the ALJ's treatment of Mr. LaVanche's opinion does not warrant reversal.

Dr. Ackner

Dr. Ackner completed several forms on Plaintiff's behalf. (Doc. 9, PageID 492-96, 698-700.) In the Statement of Errors, Plaintiff specifically references only the Impairment Questionnaire completed on August 2, 2018. (Doc. 10, PageID 719, citing Doc. 9, PageID 698-700). In this form, Dr. Ackner indicated that she had seen Plaintiff

11

approximately once every month or two since October 2016. (Doc. 9, PageID 698.) She documented several signs and symptoms related to diagnoses of Bipolar Disorder, unspecified, and Social Phobia. (*Id.*) According to Dr. Ackner, Plaintiff's mood and anxiety disorders "certainly…[could] cause physical symptoms and intensify [the] experience of pain and/or physical problems." (*Id.*) She opined that Plaintiff would be absent from work more than three times per month and would be distracted by his psychological symptoms approximately half of the time during an eight-hour workday. (*Id.,* PageID 699-700.) Dr. Ackner concluded that Plaintiff would not be able to maintain full-time, competitive work on a sustained basis without missing work more than two times per month or being off task more than 15% of the workday. (*Id.,* PageID 700.)

      The ALJ assigned Dr. Ackner's opinions partial weight and correctly noted that they are not entitled to controlling or deferential weight under the regulations. (*Id.,* PageID 61.) The ALJ supported this assignment of partial weight by explaining that the record "does not support limitations as extreme as those opined by Dr. Ackner." (*Id.*) The ALJ specifically discussed Dr. Ackner's opinion that Plaintiff would be absent more than three times per month, distracted by his psychological symptoms approximately half of the time, and unable to maintain full-time work. (*Id.*) In addition to noting that Dr. Ackner's opinion regarding the inability to maintain full-time work is an "issue reserved to the Commissioner," the ALJ found that "the totality of her opinion is not supported by the evidence in the record and is not adequately explained," and is also "vague and does not tie limitations to his conditions." The ALJ concluded that "while…[Plaintiff's]

mental impairments do support some functional restrictions, both Dr. Ackner's records and his therapy notes do not support the extreme restrictions opined by Dr. Ackner." (*Id.*)

The ALJ's decision to discount Dr. Ackner's opinions is supported by substantial evidence. The ALJ found that Dr. Ackner's opinions are unsupported by her own treatment notes and are inconsistent with the therapy records. The ALJ again observed that although Plaintiff sometimes experienced "setbacks," he "generally demonstrated improvement throughout treatment." (*Id.*) To support this observation, the ALJ referenced several other treatment notes in the record, which are summarized in detail earlier in the decision. (*Id.,* PageID 53-58.)  The ALJ also cited to the mental status examination that was performed when Plaintiff initially began treatment, when the findings included only moderate anxiousness, anger, agitation, and impulsivity with mild depression, guilt, and circumstantial and racing thoughts. (*Id.,* PageID 17, citing *id.,* PageID 382-83.) The ALJ further noted that Plaintiff was mildly well-groomed with mildly avoidant eye contact but had average intellectual functioning, no impairment in cognition, and no evidence of delusions, self-abuse, aggression, hallucinations, or other perceptual abnormalities. (*Id.*) The ALJ concluded that even when Plaintiff's complaints would likely be at their worst—when he initiated treatment— the documented findings "do not support Dr. Ackner's extreme opinions." (*Id.,* PageID 61.)

The ALJ also provided only partial weight because "the totality of [Dr. Ackner's] opinion…is not adequately explained." (Doc. 9, PageID 61.) *See* 20 C.F.R. § 404.1527(c)(3) ("the better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Indeed, Dr. Ackner merely checked

13

boxes next to several symptoms experienced by Plaintiff and generally referenced the "clinical record," without citing to specific support for her opinion that Plaintiff would miss work more than three times per month, would be distracted by his psychological symptoms one half of the time, and would be unable to perform full-time competitive work on a sustained basis. (Doc. 9, PageID 699-700.) The ALJ's conclusions are supported by substantial evidence and the applicable legal framework did not require him to do more.

Plaintiff further asserts that the ALJ "vaguely" assigned partial weight to Dr. Ackner's opinion "without explaining which 'parts' of these opinions were given weight." (Doc. 10, PageID 718.) But the reasoning discussed above applies equally here: the ALJ explained that the record "does not support the extreme restrictions" identified by Dr. Ackner. (Doc. 9, PageID 61.) This statement sufficiently clarifies which parts of Dr. Ackner's opinion received weight.

Accordingly, the ALJ's evaluation of Dr. Ackner's opinion is supported by substantial evidence and does not warrant reversal.

<u>Drs. Dietz and Edwards</u>

David Dietz, Ph.D. reviewed Plaintiff's file on behalf of the State agency on January 23, 2017. (Doc. 9, PageID 86-87, 120-22.) Dr. Deitz found mild restrictions in the "B Criteria" areas of understanding, remembering, or applying information and adapting or managing oneself. (*Id.,* PageID 116.) He found moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (*Id.*) Dr. Deitz opined that Plaintiff might "experience some limitations with prolonged

14

concentration," and could "sustain simple [and] most detailed tasks in an environment where production standards and schedules are more flexible." (*Id.,* PageID 121.) According to Dr. Deitz, Plaintiff might experience some limitations with social interactions but could "occasionally [and] superficially interact with co-workers, supervisors, and the general public." (*Id.,* PageID 121-22) Dr. Deitz further opined that Plaintiff was capable of "functioning in an environment where day to day work tasks are consistent." (*Id.,* PageID 122.)

Joseph Edwards, Ph.D. reviewed the updated record upon reconsideration on April 13, 2017. (*Id.,* PageID 144-48.) Dr. Edwards affirmed Dr. Deitz's assessment, except that he found moderate difficulties in Plaintiff's ability to adapt or manage himself. (*Id.,* PageID 144.)

The ALJ assigned partial weight and found that the reviewing psychologists' opinions are generally supported by the record. (*Id.,* PageID 59-60.) The ALJ determined that the limitations identified by Drs. Dietz and Edwards are consistent with the level of functioning reflected on Plaintiff's mental status examinations and cited to several examples from the record. (*Id.*) The ALJ concluded that "when giving [Plaintiff] the full benefit of the doubt… [Plaintiff] is somewhat more limited than opined by Drs. Dietz and Edwards." (*Id.*, PageID 60.) The ALJ further stated: "Nevertheless, the additional limitations are not work preclusive, which is consistent with the findings of Drs. Dietz and Edwards." (*Id.*)

Plaintiff contends that the ALJ failed to adequately evaluate the administrative findings of Drs. Dietz and Edwards because "the ALJ failed to adopt their limitations

15

despite purportedly finding that [Plaintiff] is actually <u>more</u> limited than they opined." (Doc. 10, PageID 721-22.) According to Plaintiff, "'occasional' and 'superficial' are not coterminous," and the ALJ failed to meet his burden at Step Five because "the Court cannot discern whether the additional limitation to superficial interactions would preclude substantial gainful employment in the national economy." (*Id.*, PageID 722, citing *Perrine v. Berryhill,* No. 1:18-CV-492019, 2019 U.S. Dist. LEXIS 49415, at *21 (N.D. Ohio Mar. 25, 2019).)

Plaintiff correctly asserts that the terms "occasional" and "superficial" are not interchangeable. This Court has routinely recognized that "occasional contact" refers to the *quantity* of time spent with individuals, while "superficial contact" goes to the *quality* of the interactions. *See Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021) (Deavers, M.J.), *report and recommendation adopted,* No. 2:20-CV-2566, 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, D.J.), citing, e.g., *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (Vascura, M.J.), *report and recommendation adopted sub nom. Hutton v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-339, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (Morrison, D.J.) (reversing and remanding where ALJ explanation was lacking because "superficial interaction" is a well-recognized, work-related limitation); *Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions.'"); *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL

6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.) ("'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added) (citation omitted)).

Nevertheless, Plaintiff's contention lacks merit because the ALJ adequately accounted for both the quantity and the quality of social interaction in the RFC. As discussed above, Drs. Dietz and Edwards opined that Plaintiff could "occasionally and superficially interact with co-workers, supervisors, and the general public." (Doc. 9, PageID 121-22, 147.) The ALJ then limited Plaintiff to "occasional interaction with supervisors and coworkers" (Doc. 9, PageID 51), which accounts for the reviewers' opinions regarding the *quantity* of time ("occasional") that Plaintiff could spend with such individuals. The ALJ further limited Plaintiff to "no jobs requiring tandem tasks or teamwork" (*id.*), which addresses the reviewers' assessments regarding the *quality* of the interactions ("superficial") between Plaintiff and his supervisors or coworkers. Moreover, the ALJ's limitation of Plaintiff to no interaction with the general public (*id.*) is more restrictive than – and thus more than adequately accounts for – the State agency reviewers' assessment that Plaintiff is limited to occasional and superficial interaction with the general public. Thus, although the ALJ did not specifically explain the difference between "occasional" and "superficial," the ALJ sufficiently accounted for the difference between these terms in the RFC.

The ALJ also did not err at Step Five of the sequential evaluation. He appropriately asked the vocational expert to testify about the jobs available to a hypothetical person with Plaintiff's work limitations, including occasional contact with

17

coworkers and supervisors, no jobs requiring tandem tasks or teamwork, and no interaction with the general public. (Doc. 9, PageID 102.) *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

For these reasons, the ALJ's evaluation of the State agency reviewers' findings is supported by substantial evidence.

## VI.   CONCLUSION

In sum, substantial evidence supports the ALJ's explanation for the weight that he assigned to the medical opinions in the record. *See Blakley,* 581 F.3d at 406 ("The substantial-evidence standard…presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." (citation omitted)). The ALJ's assignment of partial weight to the opinions of Mr. LaVanche, Dr. Ackner, and the State agency reviewing psychologists was within the zone of reasonable choices. The ALJ further provided reasonable explanations, supported by substantial evidence, for how and why he weighed these medical opinions. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

    1.    Plaintiff's Statement of Errors (Doc. 10) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
